CEDRIC RICHMOND and                          CIVIL ACTION
RAQUEL RICHMOND

V.                                           NO. 18-7453

NATIONAL GYPSUM SERVICES
COMPANY, ET AL.                              SECTION "F"


ORDER AND REASONS

Before the Court is the plaintiffs' motion to remand.  For the following reasons, the motion is DENIED, and Louisiana Citizens is DISMISSED without prejudice.

**Background**

This lawsuit arises out of the purchase and installation of alleged Chinese drywall in a residence located in New Orleans, Louisiana following Hurricane Katrina.

In October of 2006, Cedric and Raquel Richmond purchased a residence located at 7021 Cove Drive in New Orleans that had sustained water damage during the storm.  At the time of the purchase, the water-damaged drywall had been removed, but new drywall had not yet been installed.  The following year, the property underwent renovations, including the installation of new drywall.  Cedric Richmond, acting as general contractor, purchased approximately 180-190 sheets of drywall from Lowe's stores located in New Orleans.  During the renovation process, Mr. Richmond

secured a Builder's Risk insurance policy from Louisiana Citizens Property Insurance Corporation, which expired in 2007.

About ten years later, when the Richmonds attempted to sell the property, a home inspector alerted them to the possibility that it contained "Chinese drywall."  In response, they retained Driskill Environmental Consultants, LLC to conduct another inspection.  On June 14, 2017, Driskill inspected the residence and issued a report stating that there was "extensive, advanced corrosion to copper ground wiring, copper pipe water supply lines, and the A/C evaporator coils."  The report concluded that a majority of the drywall installed in the property was defective and that removal was required.  At the time this report was issued, the property was insured by a Homeowners' Policy issued by Louisiana Citizens.  The Richmonds later determined that National Gypsum Services Company had manufactured the drywall.

On June 14, 2018, the Richmonds, who are citizens of Louisiana, sued National Gypsum Services Company; Lowe's Home Center, Inc.; and Louisiana Citizens Property Insurance Corporation in the Civil District Court for the Parish of Orleans, asserting redhibition and negligence claims against National Gypsum and Lowes's, a products liability claim against National Gypsum, and insurance coverage claims against Louisiana Citizens. In particular, the Richmonds' petition seeks compensation for the

"significant damages" that the property has sustained and alleges that the defendants are liable for:

> sums paid . . . by the Petitioners for the remediation of the subject Property; all expenses occasioned by the remediation of the subject Property; all expenses incurred by Petitioners with respect to maintenance, repair, and preservation of the subject Property since purchase of the drywall; interest on all payments made in connection with remediation of the subject Property; general and special damages arising out of the defective drywall; diminution in value of the subject Property due to the Chinese drywall; and all of Petitioners' attorney's fees incurred with respect to the investigation and pursuit of this action.

The petition contains neither a prayer for a specific amount of monetary relief, nor a general allegation that the amount in controversy is below the threshold for federal jurisdiction.

National Gypsum timely removed the lawsuit to this Court on August 6, 2018; Lowe's consented, but Louisiana Citizens, a citizen of Louisiana, did not. The plaintiffs now move to remand the case on the ground that this Court lacks subject matter jurisdiction because the jurisdictional amount in controversy requirement is not satisfied and they share Louisiana citizenship with Louisiana Citizens.

The plaintiffs reveal in their motion to remand that they had entered into a contract to sell the property for $190,000 in April of 2017, which fell through after the discovery of the alleged defective drywall. They further relate that they eventually sold

the property to another buyer in June of 2018 for $127,000.[1] As such, the Richmonds each attach an affidavit to their motion, stipulating that the amount in controversy does not exceed $75,000 and renouncing their right to recover in excess of this amount.

## I.

Although the plaintiff challenges removal in this case, the removing defendant carries the burden of showing the propriety of this Court's removal jurisdiction. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see also Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993). Remand is proper if at any time the Court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Given the significant federalism concerns implicated by removal, the removal statute is strictly construed "and any doubt about the propriety of removal must be resolved in favor of remand." Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008)(citation omitted); Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281-82 (5th Cir. 2007)(citations omitted).

Federal Courts are courts of limited jurisdiction, possessing only the authority granted by the United States Constitution and

---

[1] In their opposition papers, National Gypsum and Lowe's note that, according to the Act of Cash Sale dated April 23, 2018 between Cedric Richmond and Pack LLC, the property was sold for the sum of $117,500 – not $127,000, as represented in Mr. Richmond's affidavit.

conferred by the United States Congress. Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001). A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the case -- that is, if the plaintiff could have brought the action in federal court from the outset. See 28 U.S.C. § 1441(a). To exercise diversity jurisdiction, complete diversity must exist between the plaintiffs and all of the properly joined defendants, and the amount in controversy must exceed $75,000. See § 1332(a)(1). To determine whether it has jurisdiction, the Court must consider the allegations in the state court petition as they existed at the time of removal. See Manguno, 276 F.3d at 723 (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)).

## II.

The Court first considers whether the jurisdictional amount in controversy requirement is satisfied. Louisiana law requires that a plaintiff include "no specific amount of damages" in his prayer for relief. La. Code Civ. Proc. art. 893. However, it also provides that "if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim exceeds or is less than the requisite amount is required." Id. "Petitions that do not explicitly declare that the federal

amount in controversy requirements are not met create a strong presumption in favor of federal jurisdiction." Lewis v. Valero Refining-New Orleans, No. 16-16590, 2017 U.S. Dist. LEXIS 35142, at *7 (E.D. La. Mar. 13, 2017); see also Worner v. Christian Home Health Care, Inc., No. 13-6416, 2014 U.S. Dist. LEXIS 4405, at *9 (E.D. La. Jan. 14, 2014) ("Plaintiff has effectively conceded that the jurisdictional amount is met by failing to limit the amount of damages in her state court petition."). When the plaintiff has alleged an indeterminate amount of damages, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Simon v. Wal-Mart Stores, 193 F.3d 848, 850 (5th Cir. 1999); see also De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995). This showing may be made by either (1) showing that it is facially apparent that the plaintiff's claims likely exceed $75,000 or (2) setting forth "summary judgment type evidence" of facts in controversy that support a finding of the jurisdictional amount. Manguno, 276 F.3d at 723; Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999). In examining the petition, courts are permitted to "make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." Robertson v. Exxon Mobil Corp., 814 F.3d 236, 240 (5th Cir. 2015). "[I]f it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and

amendments reducing the amount do not deprive the district court of jurisdiction." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000). If the removing defendant cannot show that the amount in controversy is facially apparent, it may be able to "set[] forth the facts in controversy – preferably in the removal petition, but sometimes by affidavit – that support a finding of the requisite amount." Luckett, 171 F.3d at 298. If the petition is ambiguous as to whether the alleged damages surpass the jurisdictional amount in controversy, the Court may consider a post-removal affidavit that clarifies the original complaint. Asociación Nacional de Pescadores a Pequeña Escala o Artesanales de Colombia (ANPAC) v. Dow Química de Colombia, 988 F.2d 559, 565 (5th Cir. 1993), abrogated on other grounds by Marathon Oil Co. v. Ruhgras, 145 F.3d 211, 214 (5th Cir. 1998), rev'd on other grounds, 526 U.S. 574 (1999).

If the removing party satisfies its burden, the plaintiff can only defeat removal by showing that it is "legally certain that his recovery will not exceed the amount stated in the state complaint." De Aguilar, 47 F.3d at 1412; see St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). Absent a statute that restricts recovery, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their

complaints; once a defendant has removed the case, St. Paul makes later filings irrelevant." De Aguilar, 47 F.3d at 1412 (quoting In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992)(per curiam)).

In this case, the plaintiffs seek compensation for damages caused by the alleged presence of Chinese Drywall in their property. Their state court petition describes those damages as "significant" and claims that there was "extensive, advanced corrosion to copper ground wiring, copper pipe water supply lines, and the A/C evaporator coils." The petition further alleges that the defendants are liable for:

> all sums paid to date by the [plaintiffs] for the remediation of the subject Property; all expenses occasioned by the remediation of the subject Property; all expenses incurred by [plaintiffs] with respect to maintenance, repair, and preservation of the subject Property since purchase of the drywall; interest on all payments made in connection with remediation of the subject Property; general and special damages arising out of the defective drywall; diminution in value of the subject Property due to the Chinese drywall; and all of [plaintiffs'] attorney's fees incurred with respect to the investigation and pursuit of this action.

National Gypsum declares in its Notice of Removal that it is "readily apparent from the face of the Petition that the amount in controversy exceeds $75,000." The plaintiffs contend that this statement is too "conclusory." And, they submit, because National Gypsum did not file an affidavit or present any other evidence

regarding the amount in controversy, it failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Notably, defendants are not required to come forward with "summary judgment type evidence" to satisfy their removal burden where it is facially apparent from the petition "that the plaintiff's claims likely exceed $75,000." See Luckett, 171 F.3d at 298. In their opposition papers, National Gypsum and Lowe's contend that the plaintiffs' petition seeks a "vast" amount of damages, including *all* expenses relating to the remediation of the property. The removing defendants note that the damages alleged are ones that are facially likely to exceed the requisite jurisdictional amount. To support this contention, they invoke In re Chinese-Manufactured Drywall Prods. Liab. Litig., in which another Section of this Court determined that the cost to remediate a small home in the New Orleans area damaged by Chinese drywall exceeded $136,000. MDL No. 2047, 2010 U.S. Dist. LEXIS 41190, at *58 (E.D. La. April 27, 2010). The removing defendants further submit that the amount in controversy calculation includes attorney's fees, when available by statute. See Manguno, 276 F.3d at 723. Here, plaintiffs seek attorney's fees incurred in this redhibition action; because these fees are mandatory under Louisiana's redhibtion statute, they are included in the amount in controversy calculation. See Pendleton v. Parke-Davis, No. 00-

2736, 2000 U.S. Dist. LEXIS 18410, at *13 (E.D. La. Dec. 11, 2000). Ultimately, the defendants aver, a common-sense review of the plaintiffs' petition supports a finding that the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court agrees.

Moreover, where, as here, there is no ambiguity on the face of the petition as to the amount in controversy, "post-removal affidavits, stipulations, and amendments . . . do not deprive the district court of jurisdiction." Gebbia, 233 F.3d at 883. As such, the Court may not consider the plaintiffs' post-removal affidavits, stipulating that their damages "do not exceed $75,000" and renouncing their right to recover in excess of this amount.[2]

## III.

The Court next considers whether the complete diversity requirement is met. It is undisputed that the plaintiffs and Louisiana Citizens share Louisiana citizenship. However, National Gypsum and Lowe's urge the Court to disregard the citizenship of Louisiana Citizens because it was improperly joined, or in the alternative, because the claims against it were egregiously "misjoined."

---

[2] Presumably, if, as the plaintiffs suggest, this action is worth less than $75,000, they would accept some amount less in a possible settlement.

A.

Pursuant to the doctrine of "improper joinder," a state court action may be removed despite the presence of a non-diverse defendant, where the joinder of such defendant was improper. Smallwood v. Illinois Central R. Co., 385 F.3d 568, 573 (5th Cir. 2004). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." Id. at 574. "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." Id. at 573. The removing defendant may show improper joinder in one of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id. In determining whether a party was improperly joined, all contested factual issues and state law ambiguities are resolved in favor of the plaintiff. Gasch, 491 F.3d at 281. "A defendant is improperly joined if the moving party establishes that (1) the plaintiff has stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff has not stated a claim against a defendant that he properly alleges is nondiverse." Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd., 818 F.3d 193, 199 (5th Cir. 2016) (emphasis in original).

Because Louisiana Citizens is non-diverse, to establish subject matter jurisdiction in this Court based upon the improper joinder doctrine, National Gypsum and Lowe's have the burden of establishing that the plaintiffs have failed to state a claim against Louisiana Citizens. See Int'l Energy Ventures Mgmt., LLC, 818 F.3d at 207-08 ("because Smallwood requires us to use the Rule 12(b)(6)-type analysis, we have no choice but to apply the federal pleading standard embodied in that analysis."). In doing so, the defendants must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. at 199-200 (citing Smallwood, 385 F.3d at 573). The Court underscores that the possibility of recovery must be "reasonable," not merely theoretical. Smallwood, 385 F.3d at 573; Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)("If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder.")(internal quotation marks omitted). When it is determined "that a nondiverse party has been improperly joined to defeat diversity, that party must be dismissed without prejudice." Int'l Energy Ventures Mgmt., LLC, 818 F.3d at 209.

B.

The diverse defendants submit that the plaintiffs have "no reasonable basis" of obtaining insurance coverage from Louisiana Citizens under either the Builder's Risk Policy or the Homeowners' Policy.

Louisiana law declares that an insurance policy is like any other contract and should be construed according to the general rules of contract interpretation set forth in the Civil Code.  See Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). The Court's role in interpreting contracts is to determine the common intent of the parties.  La. Civ. Code art. 2045.  In doing so, Civil Code article 2047 requires that words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.  See Henry v. South Louisiana Sugars Cooperative, 957 So.2d 1275, 1277 (La. 2007) (citing Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003)). "When the words of a contract are clear and explicit and lead to no absurd consequences," Civil Code article 2046 declares, "no further interpretation may be made in search of the parties' intent", and the agreement must be enforced as written.  Hebert v. Webre, 982 So.2d 770, 773-74 (La. 2008).

As to the Builder's Risk Policy, National Gypsum and Lowe's contend that the plaintiffs have no possibility of recovery because

(1) loss caused by defective drywall is not a "covered peril" and (2) there was no "occurrence" during the policy period. The Court agrees.

The Builder's Risk Policy provides:

> [W]e insure for direct physical loss to the property covered caused by: 1A. Fire or lightning. 1B. Internal Explosion . . . 2. Windstorm or hail . . . 3. Explosion . . . 4. Riot or civil commotion . . . 5. Aircraft . . . 6. Vehicles . . . 7. Smoke . . . 8. Volcanic Eruption . . . 9. Vandalism or malicious mischief . . . .

Because this Policy only provides coverage for damage caused by an enumerated peril, and defective drywall does not fall within any of the specified categories, the plaintiffs have no possibility of recovering under this Policy.

Even if one of the nine enumerated perils were to encompass defective drywall, the plaintiffs' recovery under this Policy would still be foreclosed because the alleged damage occurred outside of the policy period. Notably, the Builder's Risk Policy stipulates:

> This policy applies only to loss which occurs during the policy period.

The Policy further sets forth a policy period dating from "10/06/2006" to "10/06/2007." Moreover, the damage caused by the allegedly defective drywall "occurred" during the spring of 2017 when the plaintiffs were first alerted to the presence of Chinese

drywall in their property.[3]  Because there was no "occurrence"

during the policy period, coverage under the Builder's Risk Policy

was not triggered.  Accordingly, the Court finds that there is no

reasonable basis to predict that the plaintiffs could recover from

Louisiana Citizens under the Builder's Risk Policy.[4]

The Court next considers whether the removing defendants have

satisfied their burden of proving that the plaintiffs have no

possibility of recovering under the Homeowners' Policy.  With

respect to this Policy, National Gypsum and Lowe's urge that

coverage for damages caused by defective drywall is unambiguously

barred by four coverage exclusions: (1) "faulty, inadequate or

defective materials;" (2) "latent defect;" (3) "corrosion;" and

(4) "pollution."   To support this contention, the diverse

defendants submit that, another Section of this Court, in In re

Chinese Manufactured Drywall Products Liability Litigation,

determined that "claims for losses related to Chinese drywall

---

[3] Louisiana courts apply the "manifestation theory" to determine
when damage "occurs" for purposes of triggering coverage under
insurance policies.   See Rubi v. Sunrise Homes, Inc., 94-CA-473
(La. App. 5 Cir. 3/15/95); 653 So. 2d 1215, 1226-30.  For example,
in Alberti v. Welco Manufacturing, the Louisiana Fourth Circuit
Court of Appeals held that, for purposes of triggering insurance
coverage, property damage caused by defective sheetrock mud
"occurred" when the evidence of the damage manifested itself,
rather than when the sheetrock mud was placed in the home.   560
So. 2d 964 (La. App. 4 Cir. 1990).
[4] By failing to address in their motion to remand the possibility
of their recovery under the Builder's Risk Policy, the plaintiffs
appear to concede that coverage under this Policy is foreclosed.

[were] excluded by the faulty materials exclusion and the corrosion exclusion" under several homeowners' policies similar to the one presented in this case. 759 F. Supp. 2d 822, 848 (E.D. La. 2010) (Fallon, J.). The removing defendants further contend that, the following year, the Louisiana Fifth Circuit Court of Appeals, in Ross v. Adams Construction & Design, LLC, held that all four of the aforementioned homeowners' policy exclusions unambiguously excluded coverage for damages caused by defective drywall. 10-852 (La. App. 5 Cir. 6/14/11); 70 So. 3d 949. The defendants emphasize that the Ross court was tasked with analyzing the same Louisiana Citizens homeowners' policy at issue in this case. See id. The Court addresses each policy exclusion raised by the defendants in turn.

*(1) Faulty, Inadequate or Defective Materials*

The removing defendants first contend that coverage for damage caused by defective drywall is barred by the "faulty, inadequate or defective materials" exclusion. The Homeowners' Policy states:

> We do not insure for loss to property described in Coverages A and B caused by any of the following.
> . . .
>
> 3. Faulty, inadequate or defective: . . .
>
> c. materials used in repair, construction, renovation or remodeling . . .

> of part or all of any property whether on or
> off the "residence premises."

In interpreting the "faulty materials" exclusion contained in several homeowners' policies similar to the one at issue here, another Section of this Court, in In re Chinese Manufactured Drywall Prods. Liab. Litig., determined that Chinese-manufactured drywall that damaged electrical devices, appliances, and wiring constituted "faulty materials" within the meaning of the policy, such that the resulting loss was excluded from coverage. 759 F. Supp. 2d 822, 845 (E.D. La. 2010). That Court reasoned that "it is inconsistent to argue that Plaintiffs have suffered a loss due to the Chinese drywall, but that the drywall is not in any way faulty." Id. at 846. The following year, in Ross, the Louisiana Fifth Circuit similarly held that Chinese drywall that emitted sulfuric gas and damaged plumbing, wiring, and metal components of a home qualified as a "faulty, inadequate, or defective" material and that damage caused by the drywall was excluded under the homeowners' policy. 70 So. 3d 949, 953. The diverse defendants contend that, like the plaintiffs in Ross and In re Chinese Manufactured Drywall Prods. Liab. Litig., the plaintiffs here allege that the drywall is "defective" and that it has caused "extensive, advanced corrosion to copper ground wiring, copper pipe water supply lines, and the A/C evaporator coils." Accordingly, they submit that the plaintiffs' claims for damages

caused by this "defective, inadequate or faulty" material are barred under the Homeowners' Policy.

*(2) Latent Defect*

The removing defendants next contend that the plaintiffs' defective drywall related claims are also barred by the "latent defect" exclusion, which provides:

> We do not insure, however, for loss: . . . Caused by . . .
>
> (6) Any of the following:
>
> (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself.

Although the Court in In re Chinese Manufactured Drywall Prods. Liab. Litig. was "unable to make a definitive determination as to whether the damage caused by Chinese drywall in the Plaintiffs' homes constitute[d] a latent defect," the Louisiana Fifth Circuit in Ross definitively held the following year that damage caused by Chinese drywall was excluded from coverage under the latent defect exclusion in the Louisiana Citizens homeowners' policy. 759 F. Supp. 2d at 838-39; 70 So. 3d at 953-54. In so holding, the Ross court defined "latent defect" as "a defect that is hidden or concealed from knowledge, as well as from sight, and which a reasonable customary inspection would not reveal." 70 So. 3d at 953. The removing defendants contend that, because the plaintiffs in this case were first alerted to the presence of Chinese drywall

18

in their property nearly ten years after it was installed, the allegedly defective drywall is a "latent defect," damage caused by which is explicitly excluded from coverage under the Homeowners' Policy.

*(3) Corrosion*

National Gypsum and Lowe's next submit that the plaintiffs' defective drywall related claims are also excluded under the "corrosion" exclusion, which provides:

> We do not insure, however, for loss: . . . Caused by . . .
>
> (6) Any of the following:
>
> (c) Smog, rust or other corrosion, or dry rot.

In interpreting this provision, both the Court in <u>In re Chinese Manufactured Drywall Prods. Liab. Litig.</u>, and the Louisiana Fifth Circuit in <u>Ross</u>, held that corrosion-related loss caused by defective Chinese drywall was excluded under the corrosion exclusion. 759 F. Supp. 2d at 846-48; 70 So. 3d at 954. In so holding, the Court explained that the exclusion precludes coverage regardless of whether the loss is corrosion itself or the loss is "due to corrosion." <u>In re Chinese Manufactured Drywall Prods. Liab. Litig.</u>, 759 F. Supp. 2d at 846-48. Accordingly, the removing defendants contend that, because the plaintiffs here allege that the drywall caused "extensive, advanced, corrosion to copper ground wiring, copper pipe water supply lines, and the A/C

19

evaporator coils," they seek insurance coverage for a corrosion-related loss, which is precluded under the corrosion exclusion.

*(4) Pollution*

Finally, the diverse defendants contend that coverage for the plaintiffs' drywall-related claims is also excluded under the "pollution" exclusion.  This provision provides:

> We do not insure, however, for loss:  . . . Caused by . . .
>
> (6) Any of the following:
>
> (e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

In re Chinese Manufactured Drywall Prods. Liab. Litig. determined that the pollution exclusion did not apply to bar coverage for damage caused by defective drywall.  759 F. Supp. 2d at 839-43.  In reaching this conclusion, the Court relied heavily upon Doerr v. Mobil Oil Corp., 774 So. 2d 119 (La. 2000), in which the Louisiana Supreme Court "addressed the meaning and applicability of" the pollution exclusion.  Id.  In applying the considerations set forth in Doerr to determine the applicability of the pollution exclusion, the Court found that the plaintiffs, as homeowners and occupants, were not "polluters" and that Chinese

drywall was not a "typical pollutant." Id. Nonetheless, the diverse defendants submit that, the following year, the Louisiana Fifth Circuit in Ross, held that the pollution exclusion barred coverage for damage caused by the release of sulfuric gas from defective drywall. 70 So. 3d at 953-54. The Ross court reasoned that, because sulfuric gas emitted from drywall is a "gaseous irritant or contaminant" within the language of the policy, the gas emitted from the drywall constitutes a "pollutant." Id. Accordingly, the diverse defendants contend that the plaintiffs' damage allegedly caused by the release of sulfuric gas from their drywall is excluded from coverage under the Homeowners' Policy.

The plaintiffs aver that their lawsuit should be remanded because the diverse defendants, in their Notice of Removal, overlook two-on-point cases from the Civil District Court for the Parish of Orleans. According to the plaintiffs, these Louisiana state court decisions stand for the proposition that exclusions in homeowners' policies do not bar claims relating to Chinese drywall. For example, in Finger v. Audubon Insurance Co., the Civil District Court for the Parish of Orleans determined that the "faulty or defective materials," "latent defect," "corrosion," and "pollution" exclusions within a homeowners' policy did *not* foreclose the possibility of coverage for damages resulting from the installation of high sulfur content drywall. No. 09-8071, 2010 WL 122273 (La. Civ. D. Ct. Mar. 22, 2010). More recently, in

21

Burns v. Fireman's Fund Insurance Co., the Civil District Court
for the Parish of Orleans denied an insurance company's motion for
summary judgment on the issue of coverage under a homeowners'
policy. 2016-4002 (La. Civ. D. Ct. Feb. 21, 2018), writ denied
2018-C-0325 (La. App. 4 Cir. May 18, 2018). The plaintiffs'
counsel, who represented the homeowners in that case, declares
that the insurer had contended that the four coverage exclusions
at issue here barred the plaintiffs' claims concerning defective
drywall and that the court denied the motion in open court.
Thereafter, he notes, the Louisiana Fourth Circuit Court of Appeals
denied the insurance company's application for a supervisory writ.

The plaintiffs emphasize that, because the Civil District
Court for the Parish of Orleans (the court in which they filed
their state court petition) is under the "purview" of the Louisiana
Fourth Circuit Court of Appeals, it is not bound to follow Ross (a
Louisiana Fifth Circuit decision) or In re Chinese Manufactured
Drywall Prods. Liab. Litig. (a federal district court decision).
Moreover, the plaintiffs contend that the removing defendants cite
no "binding" authority establishing that the plaintiffs are barred
from recovering based on coverage exclusions in a homeowners'
policy. The removing defendants counter that the plaintiffs'
reliance on Finger and Burns is misplaced. The Court agrees and
notes that decisions of a state trial court provide no precedential
guidance to this Court.

First, this Court, sitting in diversity, must interpret Louisiana law as would the Louisiana Supreme Court if faced with the same issue -- not as would a Louisiana trial court.  See *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d at 847 ("[B]ecause the cases at issue are before the Court on diversity, the Court sits as an *Erie* court and must apply Louisiana law . . . .  To determine a state law question, [the court] first look[s] to decisions of the Louisiana Supreme Court.") (internal citations omitted).

Second, in applying Louisiana law in *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, that Court declined to follow the *Finger* court's holdings as to the "faulty materials" exclusion and the "corrosion" exclusion.  759 F. Supp. 2d at 845-48.  As to the faulty materials exclusion, the *Finger* court held that because the drywall was intended to "act as an aesthetic or 'finishing' material for a home," and there was no allegation that it was hung incorrectly, it did not constitute a faulty material under the policy.  No. 09-8071, 2010 WL 122273, at *7-8 (La. Civ. D. Ct. Mar. 22, 2010).  In refusing to follow *Finger*'s approach, the *Drywall* Court noted that courts, not litigants, are tasked with interpreting the meaning of insurance policies, and "*Finger* failed to provide an explanation as to how it came to define faulty materials, only citing conclusions reached in the plaintiff's own memorandum and testimony, and the testimony of the insurer's

corporate representative." See In re Chinese Manufactured Drywall Prods. Liab. Litig., 759 F. Supp. 2d at 845. Accordingly, the Court looked to case law from other jurisdictions that addressed "faulty materials" exclusions in insurance policies; embracing a "broad definition of faulty materials under common usage of a defect or imperfection in a physical thing," the Court concluded that the Chinese drywall was a "faulty material" under the policy. Id. at 845-46. In addition, the Court declined to follow Finger's holding as to the "corrosion" exclusion, instead concluding that this provision precludes coverage for damages caused by high sulfur content drywall. Id. In so holding, the Court looked to Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corp., 579 So. 2d 981 (La. 1991) for guidance and reasoned that Finger's approach was inconsistent with "what the Louisiana Supreme Court would do if faced with the corrosion exclusions at issue." Id. at 847.

Finally, as noted above, although this Court recognizes that the Civil District Court for the Parish of Orleans, in Burns, denied a homeowners' insurance company's motion for summary judgment in a Chinese drywall coverage dispute, it also finds that, in the absence of reasoning, the Burns judgment provides little guidance. Moreover, the Court notes that the Louisiana Fourth Circuit's subsequent denial of this insurance company's writ application informs no precedential value. See Nabors Offshore

_Corp. v. Caterpillar Inc._, 2016-0003 (La. App. 4 Cir. 11/30/16); 204 So. 3d 1068, 1071 ("That is, a writ denial is not precedential for any purpose; it is merely a statement that the court is declining to exercise its supervisory jurisdiction to review the issues addressed at that time.").

In the face of on-point case law from another Section of this Court, as subsequently reinforced by the Louisiana Fifth Circuit, and in the absence of contradictory case law from the Louisiana Fourth Circuit, this Court finds that the removing defendants have satisfied their burden of proving that the plaintiffs have "no reasonable basis" of recovering under the Homeowners' Policy for damages caused by defective drywall. In reaching this conclusion, the Court emphasizes that the possibility of recovery must be "reasonable," not merely theoretical. _See Smallwood_, 385 F.3d at 573. Having determined that Louisiana Citizens was improperly joined to defeat diversity jurisdiction, the Court is obliged to dismiss Louisiana Citizens without prejudice.[5] _See Int'l Energy Ventures Mgmt., LLC_, 818 F.3d at 209.

Accordingly, IT IS ORDERED: that the plaintiffs' motion to remand is DENIED and that Louisiana Citizens is hereby DISMISSED without prejudice.

---

[5] In light of the Court's determination that Louisiana Citizens was improperly joined, the Court need not reach the removing defendants' alternative rationale for disregarding the citizenship of this non-diverse defendant -- namely, _Tapscott_ misjoinder.

New Orleans, Louisiana, October 3, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE